**UNITED STATES of America, Appellee,**

v.

**Theodore E. LUCIOW, Appellant.**

**No. 75–1031.**

United States Court of Appeals, Eighth Circuit.

Submitted April 16, 1975.

Decided July 3, 1975.

---

**299**

Sherman Bergstein, Minneapolis, Minn., for appellant.

Daniel M. Scott, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before MATTHES, Senior Circuit Judge, ROSS and WEBSTER, Circuit Judges.

PER CURIAM.

On July 9, 1974, a search of the Columbia Heights, Minnesota, residence of appellant Theodore Luciow pursuant to a federal search warrant yielded a substantial quantity of amphetamines. Luciow was arrested and was subsequently tried and convicted under an indictment charging him with unlawful possession of approximately 68,000 tablets of amphetamines with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). In this appeal, he challenges the order of the District Court[1] made at time of trial denying Luciow's motion to suppress the evidence obtained during the search. Luciow contends that the search warrant was invalid because (1) the paid informant who supplied the information which formed the basis of the application for the search warrant obtained that information by an illegal entry and warrantless search of Luciow's residence and (2) the affidavit of the government agent in support of the search warrant contained statements with respect to the informant's reliability which the agent knew to be false. Finally, appellant contends that in view of the trial testimony of the informant that she herself had planted the drugs in appellant's apartment, the evidence was insufficient to support the jury's verdict of guilty. We reject these contentions and affirm the judgment of conviction.

## I.

The evidence at the suppression hearing showed that the informant, Elaine Stenseth, had been working for government agent Terryl L. Anderson for at least eight months. She had

---

1. Honorable Edward J. McManus, Chief United States District Judge for the Northern District of Iowa, sitting by designation in the District of Minnesota.

maintained an "on-again, off-again" relationship with Luciow, who had fathered two of her children. It is undisputed that the informant had received payments from time to time from the government for information which she had supplied. At the suppression hearing, she testified that she did not have permission to be on Luciow's premises at the time she discovered the amphetamines. Luciow testified that he had told her to stay away. The government challenges the credibility of the informant in view of her subsequent trial testimony, but, for purposes of appellant's first contention, we assume that she entered Luciow's apartment without permission and as a mere trespasser. There is, however, no evidence in the record that agent Anderson or any other federal or state officer involved in the July 9, 1974, search directed, authorized or knew of any illegal entry by Stenseth on Luciow's property. Before her action can be attributed to the government, some degree of government instigation of the illegal entry must be shown. *United States v. Valen*, 479 F.2d 467 (3d Cir. 1973), *cert. denied*, 419 U.S. 901, 95 S.Ct. 185, 42 L.Ed.2d 147 (1974); *see United States v. Burton*, 475 F.2d 469 (8th Cir.) *cert. denied*, 414 U.S. 835, 94 S.Ct. 178, 38 L.Ed.2d 70 (1973). This contention is therefore without merit.

## II.

The affidavit of Terryl L. Anderson, pertinent portions of which are set out in the margin,[2] recited that the informant had furnished information to federal agents which had resulted in the arrests of several individuals on drug charges in which a variety of controlled substances had been found. He then made the statement which appellant challenges in this appeal: "Information given to this agent has never been shown to be false."

At the suppression hearing, the informant testified that she had on a number of occasions supplied information to Anderson, which she knew to be false. One such incident involved a report that Luciow was to receive a shipment of drugs from Mexico, which was to arrive by Air Freight. She testified that Anderson later called her to report that the shipment did not contain drugs. Anderson took the stand, but could not recall this incident. Defense counsel then offered into evidence a tape of a telephone conversation between Stenseth and Anderson in which Anderson reported that her tip had not borne fruit. In that conversation, he hypothesized that Luciow may have been testing that method of delivery as a dry run. Stenseth suggested the possibility that Luciow had decided upon another route.[3]

2. Terryl L. Anderson, first being duly sworn and upon oath, does state:

\* \* \* \* \* \*

b. That your affiant has spoken with a confidential reliable informant who has in the past 9 months furnished information to federal agents of the Drug Enforcement Administration which has resulted in arrests of seven individuals and has led to the conviction of one of those, the other cases pending. In these cases, controlled substances were found, among them cocaine, marijuana, amphetamines, and heroin. Information given to this agent has never been shown to be false.

c. That the informant told your affiant that he has visited the residence of Theodore E. Luciow located at 4220 Jackson Street, NE, Minneapolis, Minnesota, several times within the past month and has observed cocaine, amphetamines, and marijuana in the residence. Luciow has offered to sell drugs to the informant in the past several months.

d. That the informant also related that within the past 72 hours he has been in the aforementioned residence and observed a large quantity of amphetamines in plastic bags familiar to your affiant as 'kegs' containing 50,-000 tablets of amphetamines. The informant described the tablets as mini-whites, familiar to your affiant as a form of amphetamine usually D-L amphetamine.

\* \* \* \* \* \*

3. The District Judge, while overruling the motion to suppress, expressed some concern at Anderson's lapse of memory. Anderson had testified that he did not always follow up on the tips personally and that the search might have been made by someone else. While still unaware of the existence of the tape, his final summation of his recollection was: "I don't—to my knowledge I don't think it happened, no. I can't say for certain."

, On its face, the affidavit meets the two-pronged test of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), that the information show the circumstances under which the informant obtained her information and also the basis upon which the affiant attests to the reliability of the informant. In *United States v. Marihart,* 492 F.2d 897 (8th Cir.), *cert. denied,* 419 U.S. 827, 95 S.Ct. 46, 42 L.Ed.2d 51 (1974), we recently had occasion to consider under what circumstances the exclusionary rule should be applied in federal court to suppress evidence where statements, affidavits or testimony used to obtain a search warrant subsequently proved to be untrue. We there adopted the standard announced by the Seventh Circuit in *United States v. Carmichael,* 489 F.2d 983 (7th Cir. 1973) (en banc), holding that evidence seized pursuant to a search warrant obtained by deliberate government perjury should be suppressed but that, in the case of reckless statements, the evidence should be suppressed only if the misrepresentation was material, if it affected the issuance of the warrant and if there was some justification for suppressing the evidence. 489 F.2d at 989. Our review of the record convinces us that the statement contained in agent Anderson's affidavit was neither intentionally untruthful nor recklessly made. The statement merely imports that the agent had never known the informant to lie to him. It followed a more specific recitation of circumstances in which the informant's information had proved to be reliable and which would clearly have supplied probable cause without giving any reliance at all to the challenged statement. We find no error in the order of the District Court denying the motion to suppress.

### III.

Appellant argues that the testimony of the informant at time of trial, in which she assumed responsibility for the presence of the amphetamines in his residence, deprived the government of sufficient evidence upon which a jury could base a guilty verdict. There is no merit to this contention. The jury had no duty to believe Stenseth and, indeed, her account of having obtained such a substantial quantity of amphetamines from the back seat of an unlocked vehicle could readily have been rejected. We view the evidence in the light most favorable to the government, accepting as established all reasonable inferences from the evidence that tend to support the action of the jury. *United States v. Buckhanon,* 505 F.2d 1079, 1085 (8th Cir. 1974); *United States v. Hutchinson,* 488 F.2d 484, 489 (8th Cir. 1973), *cert. denied sub nom. Ennis v. United States,* 417 U.S. 915, 94 S.Ct. 2616, 41 L.Ed.2d 219 (1974). The record contains evidence that approximately 75,000 amphetamine tablets were found in the basement of Luciow's house while he was present there and that other quantities were found in other rooms in the house. The street value of the amphetamines was established at approximately $15,000. The quantity of amphetamines was sufficient to permit the jury to infer that Luciow possessed them with intent to distribute. *See United States v. Hutchinson, supra,* 488 F.2d at 489, n. 10, and cases cited therein. A submissible case was made by the government.

Affirmed.