**UNITED STATES of America, Appellee,**

v.

**George Edward ANZIANO, Jr., Appellant.**

**No. 79–1484.**

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 14, 1979.

Decided Sept. 20, 1979.

years. The only issue raised on this appeal is the sufficiency of the evidence to support conviction. Specifically, Anziano contends that the evidence was insufficient to establish that he was anything more than a "knowing spectator" to a drug transaction. We disagree and affirm the conviction.

The government's evidence was primarily the testimony of two undercover agents who participated in the transaction and was uncontradicted since the defense offered no evidence. On September 5, 1978, Special Agent Dennis Miller, of the Wisconsin Department of Justice Narcotics Bureau, was introduced by a confidential informant to Anziano at Anziano's home in Eau Claire, Wisconsin. Anziano stated that "crank" (crystal methamphetamine) was available in the Twin Cities at a price of $800 an ounce. He explained that Miller would have to "front"[2] the $800 and then outlined the plan for obtaining the drug. He stated that Miller, Anziano and a third person would drive to Como Park in St. Paul. While Anziano and Miller waited at the park, the third person would drive to the connection with the $800, pick up the "crank" and return with it to the park. After a brief discussion of the availability and price of other drugs in the area, Agent Miller gave his phone number to Anziano and left.

The next evening, September 6, 1978, Miller and the informant again drove to Anziano's house. Anziano stated that the "crank" would be available the next evening, September 7, 1978, and repeated the details of the plan to obtain the drug, this time identifying the person who would take the money and pick up the drug as his partner "Matt." At Miller's request, Anziano agreed to obtain a small sample of the "crank" for him in advance, but was unsuccessful in doing so. Miller spoke briefly

Daniel M. Scott, Federal Public Defender, Minneapolis, Minn., for appellant.

Thorwald H. Anderson, Jr., U. S. Atty., James A. Morrow, Asst. U. S. Atty., Minneapolis, Minn. and Susan K. Savela, Legal Intern., for appellee.

Before STEPHENSON and McMILLIAN, Circuit Judges, and HANSON, Senior District Judge.[*]

PER CURIAM.

George E. Anziano, Jr. appeals from his conviction by jury of one count of aiding and abetting another in the distribution of a controlled substance, methamphetamine, in violation of 21 U.S.C. § 841(a).[1] Anziano was sentenced to a term of one year to be followed by a special parole term of two

[*] The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

**1.** The Honorable Harry MacLaughlin, United States District Judge for the District of Minnesota, presided.

**2.** As explained at trial, "front" money is money advanced to the go-between prior to delivery of the drugs.

with the man subsequently identified as Matthew Shano[3] on this occasion.

On September 7, 1978, Miller stopped by Anziano's house in the morning, and it was agreed Miller should wait for Anziano's call. Anziano called Miller sometime after 3:00 p. m. advising that the deal was set for 6:00 p. m. that evening. Miller then again drove to Anziano's house to work out the final plan. At this meeting Anziano stated that in return for arranging the deal he expected to get $50 and a "taste" of the drug.

Pursuant to the plan, Miller, accompanied by Agent Steven Hagenah, of the Minnesota Bureau of Criminal Apprehension, met Anziano, Matt Shano, and another individual, Brian, shortly after 6:00 p. m. at a service station near the Minnesota-Wisconsin border. Anziano advised that he had just called his connection and the "crank" would not be available until 10:00 p. m. They agreed to meet again at 9:30 p. m. Agent Miller complained that he was afraid of putting up the front money and then getting nothing in return and asked to go with Shano to the supplier. Shano said this was impossible, but agreed to let Miller put up only $200, stating he would front the rest. Miller was to pay the balance of the $800 on delivery.

At 9:30 p. m. the agents drove to Como Park as planned. Anziano was waiting for them in his car with Shano and Brian. The agents followed Anziano's vehicle to a parking lot in St. Paul. Anziano stated he would have to drive Shano to the connection and that Brian would remain with the agents. Miller gave Shano the front money, and Shano and Anziano left in Anziano's car. About ten minutes later Anziano returned alone. The agents then followed Anziano and Brian back to Como Park to await Shano's return. While waiting, Anziano stated Shano would probably return in a Monte Carlo Chevy, a limousine, or a black pickup truck.

About 11:40 p. m. Shano was dropped off at the park by a black pickup truck. Shano took some of the drug for himself and gave the rest to Miller. Miller paid Shano the balance of the $800 and paid Anziano the $50 for arranging the deal. Several days later Anziano called Miller to ask about the "taste" he had been promised.

The substance Miller received from Shano was identified by a government chemist as methamphetamine, a controlled substance within the meaning of 21 U.S.C. § 841(a).

At the close of the government's case, Anziano moved for a directed verdict of acquittal. Anziano contends that the evidence was insufficient to support conviction and that the district court erred in denying his motion and allowing the case to go to the jury.

Appellate review of a denial of a motion for judgment of acquittal is guided by familiar principles. We must examine the evidence in the light most favorable to the government and must give the government the benefit of all reasonable inferences that may logically be drawn from the evidence. *United States v. Wedelstedt*, 589 F.2d 339, 344 (8th Cir. 1978); *United States v. Cline*, 570 F.2d 731, 733 (8th Cir. 1978). *See United States v. Knife*, 592 F.2d 472, 475 (8th Cir. 1979). Thus, we have said that "[a] motion for acquittal should be granted only where 'the evidence, viewed in the light most favorable to the Government, is such that a reasonably minded jury *must* have a reasonable doubt as to the existence of any of the essential elements of the crime charged.'" *United States v. Wedelstedt*, supra at 344, *quoting from United States v. White*, 562 F.2d 587, 589 (8th Cir. 1977).

Anziano argues that he was at most a knowing spectator to the drug transaction. He contends his role was limited to initiating contact between the agents and Shano, conduct he asserts is wholly lawful. We hold that the evidence was more than adequate to sustain the jury finding that Anziano knowingly and intentionally aided and abetted Shano in the distribution of a controlled substance.

To establish aiding and abetting the government is required to show that the

---

**3.** Also known as Matthew Olson.

defendant associated himself with the unlawful venture, that he participated in it as something he wished to bring about, and that he sought by his action to make it succeed. *Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949); *United States v. Wedelstedt, supra; United States v. Buttorff,* 572 F.2d 619, 623 (8th Cir.), *cert. denied,* 437 U.S. 906, 98 S.Ct. 3095, 57 L.Ed.2d 1136 (1978); *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir. 1938). This requires "some affirmative participation [by the defendant] which at least encourages the perpetrator." *United States v. Knife, supra* at 476; *United States v. Buttorff, supra; United States v. Crow Dog,* 532 F.2d 1182, 1194–95 (8th Cir. 1976), *cert. denied,* 430 U.S. 929, 97 S.Ct. 1547, 51 L.Ed.2d 772 (1977). Thus, the mere presence of the defendant at the scene of the crime or his mere association with persons engaged in illegal activity is not sufficient. *United States v. Brown,* 584 F.2d 252, 263 (8th Cir. 1978), *cert. denied,* 440 U.S. 910, 99 S.Ct. 1220, 59 L.Ed.2d 458 (1979); *United States v. Graham,* 548 F.2d 1302 (8th Cir. 1977). *See United States v. Knife, supra.*

From the evidence recited above, the jury could reasonably have concluded that Anziano was much more than a passive observer of the drug transaction. At the initial contact on September 5, and without consulting Shano, Anziano advised Miller that the drug could be obtained and outlined the plan for accomplishing the transaction. Anziano made most of the further arrangements with Miller and referred to Shano as his "partner." On September 7 Anziano informed the agents he had talked with the connection and the transaction would be delayed several hours. Anziano drove Shano to meet the connection. While waiting with the agents, Anziano identified the vehicle in which Shano would return from the connection. Anziano demanded and received compensation for his part in arranging the deal. This is just some of the evidence from which the jury could reasonably have inferred that Anziano willingly associated himself with the unlawful venture and actively participated to bring it to a successful conclusion. *See Nye & Nissen v. United States, supra,* 336 U.S. 613, 69 S.Ct. 766, 93 L.Ed. 919 (1949).

It is not significant that Anziano did not personally have the drug in his possession at any time or that the sale was actually consummated by Shano. Our cases have clearly held that neither possession nor actual sale by the defendant need be proved by the government on a charge of distribution or aiding and abetting the distribution of a controlled substance under 21 U.S.C. § 841(a). *See United States v. Nelson,* 563 F.2d 928, 931 (8th Cir. 1977); *United States v. Collins,* 552 F.2d 243, 245–46 (8th Cir.), *cert. denied,* 434 U.S. 870, 98 S.Ct. 214, 54 L.Ed.2d 149 (1977); *United States v. Pruitt,* 487 F.2d 1241 (8th Cir. 1973).

In sum, the district court properly denied the motion for judgment of acquittal and the evidence is sufficient to sustain the jury verdict. The judgment of conviction is affirmed.