**UNITED STATES of America, Appellee,**

v.

**Jimmie Calvin CAVES, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Chloe Kathleen GORMAN, Appellant.**

**Nos. 88–5511, 88–5512.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 13, 1989.

Decided Nov. 22, 1989.

Stuart Southerland, Tulsa, Okl., for Caves.

Barry V. Voss, Minneapolis, Minn., for Gorman.

John M. Lee, Minneapolis, Minn., for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HENLEY, Senior Circuit Judge.

Jimmie Calvin Caves and Chloe Kathleen Gorman were indicted on counts of interstate travel to distribute controlled substances, and aiding and abetting such travel, in violation of 18 U.S.C. §§ 2, 1952 (1982 & Supp. V 1987); possession of marijuana with intent to distribute, and aiding and abetting such possession, in violation of 21 U.S.C. § 841(a)(1) (1982) and 18 U.S.C. § 2; and possession of cocaine with intent to distribute, and aiding and abetting such possession, in violation of 21 U.S.C. § 841(b)(1)(B)(ii) (Supp. V 1987) and 18 U.S.C. § 2. They moved to exclude evidence seized during a warrantless roadside search of their automobile and a later search of the vehicle conducted pursuant to a warrant at a police station house. In addition, Gorman challenged the admissibility of evidence obtained from two inventory searches of her purse conducted subsequent to her being taken into custody. After the district court[1] adopted the magistrate's[2] order denying their motions to suppress, the defendants entered guilty pleas on the condition that they be allowed to withdraw their pleas if this court reversed the district court's ruling on their motions

to suppress. *See* Fed.R.Crim.P. 11(a)(2). We affirm.

I.

At around 10:50 p.m. on July 21, 1988, a Minnesota state trooper made a roadside stop of the Ford LTD being driven by Caves and in which Gorman was a passenger, after clocking the vehicle's speed at seventy-six miles per hour in a sixty-five miles-per-hour zone. The LTD bore Oklahoma license plates and had been travelling northward on Interstate 35 approximately four miles north of Owatonna, Minnesota. As the police officer approached on foot from the rear of the automobile, Caves got out and met him before the officer reached the vehicle. The trooper told Caves that he had been stopped for speeding and asked to see his driver's license and evidence of automobile insurance. Caves produced an Oklahoma license and asked Gorman, who was still in the LTD, to obtain insurance documentation from the glove compartment, which she did. The trooper then requested that Caves return to the squad car with him.

While Caves was in the squad car discussing the speeding violation, the patrolman smelled an intense odor of burnt marijuana on Caves's person and breath. On at least two prior occasions, the trooper had received law enforcement training in the identification of the odor of burnt marijuana, and he recognized the smell on Caves without difficulty. Without informing Caves of his rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the patrolman advised Caves that the automobile would be searched for marijuana, adding that Caves "may as well tell [him] where the marijuana [is] in the car." Caves first responded by saying he had "littered the highway with it," but then admitted that marijuana was in the console compartment of the front seat.

Joined by another patrolman, the trooper conducted a pat search of Caves, removing

1. The Honorable Harry H. MacLaughlin, United States District Judge, District of Minnesota.

2. The Honorable Janice M. Symchych, United States Magistrate, District of Minnesota.

approximately $700.00 in cash from his pockets. The trooper then instructed Gorman to get out of the LTD and stand outside while he searched the passenger compartment.

The trooper discovered cigarette papers and two clear plastic bags of suspected marijuana in the console compartment between the driver's and front-passenger's seats. A can of aerosol disinfectant was under the armrest. The patrolman was aware that aerosol disinfectants are used to conceal the odor of large quantities of controlled substances in a given area. He then removed the keys from the ignition and opened the trunk. The trooper noticed a sheet of shiny galvanized metal spanning the width of the bottom of the trunk area and affixed by sheet metal screws. The metal sheet sealed off the spare tire compartment. The spare tire was sitting on the metal along with other items, including luggage belonging to Caves and Gorman and a cardboard box labelled "telephone." In the "telephone" box was an electronic digital scale capable of weighing gram amounts.

The trooper took Caves and Gorman to the local station house for what he termed "investigation purposes" and impounded the vehicle until a warrant could be obtained to search the concealed space. At the station house, the police took and inventoried the defendants' personal property, including Gorman's purse.

On the next morning the patrolman applied for a warrant to search all of the LTD, including the concealed space in its trunk. The warrant contained the following pertinent language: "Controlled Substances/Documents such as but not limited to, invoices and receipts indicating possession of property." The subsequent search that morning resulted in some eighty pounds of suspected marijuana being seized from behind the sheet-metal enclosure, as well as a significant quantity of suspected cocaine, a variety of suspected controlled substances in pill form, and about $25,000.00 in cash.

On the following Monday, July 25, 1988, a special agent of the Drug Enforcement Agency (DEA) Task Force took the defendants into federal custody. The DEA agent also took the personal belongings that had been inventoried earlier, and he conducted a second search of those items. Found in Gorman's purse were suspected drug notations, cash and pills.

## II.

█ Caves and Gorman first contend that the warrantless roadside search of their automobile violated their fourth amendment rights and that therefore the evidence obtained from that search is inadmissible.

The fourth amendment guarantee of the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" is "preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." *California v. Carney*, 471 U.S. 386, 390, 105 S.Ct. 2066, 2068–69, 85 L.Ed.2d 406 (1985). In certain circumstances, however, a search may comport with the fourth amendment reasonableness standard even though not conducted pursuant to a warrant. *See id.* One such exemption to the warrant requirement is the so-called "automobile exception," which allows a police officer who has lawfully made a roadside stop of an automobile to search that vehicle without a warrant if probable cause exists to believe that contraband or evidence of criminal activity is located inside. *See, e.g., Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). This exception is recognized because "[t]he mobility of automobiles ... 'creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible'" and because " 'the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.' " *Carney*, 471 U.S. at 391, 105 S.Ct. at 2069 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 367, 96 S.Ct. 3092, 3096, 49 L.Ed.2d 1000 (1976)).

The scope of this warrantless search may be as extensive as that of a search authorized by a warrant supported by probable cause and "particularly describing the place to be searched." *United States v. Ross*, 456 U.S. 798, 800, 102 S.Ct. 2157, 2160, 72 L.Ed.2d 572 (1982). Police may search throughout both the passenger compartment and trunk of the automobile. *See id.* at 825, 102 S.Ct. at 2173. They may examine the contents of all containers, packages and compartments located in the vehicle, provided that there is probable cause to believe that the object of the search will be found there. *See id.*

Probable cause for an automobile search exists if the facts and circumstances known by the police when they began the search were "sufficient in themselves" for a person "of reasonable caution" to believe that contraband or evidence of criminal activity was in the vehicle. *See Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949); *Carroll*, 267 U.S. at 162, 45 S.Ct. at 288. We do not examine each fact known by the police in isolation, but rather we consider "the totality of the circumstances" in determining whether probable cause existed for the search. *See Illinois v. Gates*, 462 U.S. 213, 230, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983). We are also aware that "a 'trained officer draws inferences and makes deductions ... that might well elude an untrained person,' and evidence collected 'must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.'" *United States v. Reed*, 882 F.2d 147, 149 (5th Cir.1989) (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).

Caves and Gorman argue that the trooper did not have probable cause to conduct the roadside search. Although the police officer smelled burnt marijuana when Caves was in the squad car, the officer did not detect the odor of any unused marijuana on Caves's person. Also, the officer did not smell any marijuana, burned or unburned, emanating from Caves's automobile. The defendants contend that while the odor of burnt marijuana on Caves's person and breath was evidence of his past use of this drug, or presence in an area where the drug was used, it was not sufficient evidence to establish probable cause for inferring the immediate presence of unused marijuana in the automobile.

The Supreme Court has recognized that the odor of an illegal drug can be highly probative in establishing probable cause for a search. *See Johnson v. United States*, 333 U.S. 10, 13, 68 S.Ct. 367, 368–69, 92 L.Ed. 436 (1948) (observing that the odor of an illegal substance testified to by a qualified affiant "might very well be found to be evidence of a most persuasive character"). Many lower courts have relied primarily upon the odor of marijuana in determining that probable cause existed for a warrantless automobile search. *See, e.g., Reed*, 882 F.2d at 149 (border patrol had probable cause after he detected burnt marijuana through rolled-down window and driver appeared nervous); *United States v. Loucks*, 806 F.2d 208 (10th Cir.1986) (probable cause existed after automobile was stopped for speeding, driver was "reeking" of marijuana as he sat in patrol car, and officer smelled what he thought was still-burning marijuana in detained vehicle); *United States v. Haley*, 669 F.2d 201 (4th Cir.) (patrolman had probable cause after he stopped speeding automobile, smelled intense odor of marijuana emanating from driver's body while he sat in police cruiser, and also smelled strong marijuana odor when passenger rolled down window of the stopped vehicle), *cert. denied*, 457 U.S. 1117, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1982). *But see, e.g., People v. Hilber*, 403 Mich. 312, 269 N.W.2d 159 (1978) (no probable cause when officers smelled burnt marijuana emanating from inside automobile and nothing in officers' training or experience supported their claim that marijuana was recently smoked). *See generally* Annotation, "Odor of Narcotics as Providing Probable Cause for Warrantless Search," 5 A.L.R.4th 681, 688–95 (1981 & Supp.1989) (listing the large majority of cases as holding that odor of marijuana, standing alone, provided probable cause for warrantless search of an automobile and its contents).

Caves and Gorman seek to distinguish those cases in which the odor of marijuana was the determinative factor in establishing probable cause by pointing out that in most of those cases the police officer smelled unburnt marijuana, in contrast with the odor of burnt marijuana detected in the present case. The defendants also note that in all of the previous cases the officer detected the marijuana odor emanating from not only the driver, as was the case here, but also from inside the automobile itself.

Although the odor of burnt marijuana on the driver alone is undoubtedly less probative of the existence of unused marijuana in the automobile than would be the odor of unburnt marijuana emanating from both the driver and the vehicle, we are unable to conclude that the odor of burnt marijuana on Caves's breath and person, when considered in the context of the circumstances confronting the trooper, was insufficient to establish probable cause for the search of the automobile. Neither Caves nor Gorman challenges the district court's findings that the trooper was qualified to detect the odor of marijuana and that he in fact smelled a strong odor of burnt marijuana on Caves's breath and person. When the trooper detected the marijuana odor, he was aware that Caves had just emerged from a vehicle driven from another state several hundred miles away. It was reasonable for the patrolman to conclude from the lateness of the hour (approximately 10:50 p.m.) and the location of the stop (Interstate 35 north) that Caves and Gorman had spent many hours riding in the automobile from Oklahoma, and that conse-quently the vehicle was the probable location where Caves had smoked marijuana or at least had been in the presence of the drug while it was being smoked. By exiting the automobile and meeting the trooper behind the vehicle instead of waiting in the vehicle and rolling down his window when the trooper arrived, Caves may have been trying to prevent the patrolman from plainly observing, or detecting the odor of, marijuana in the interior of the automobile. Indeed, if the patrolman had reached the automobile before Caves exited and had questioned him through a rolled-down window, the trooper might have easily detected the odor of burnt marijuana emanating from inside the vehicle, as was the case in *Reed.* *See* 882 F.2d at 148. But here the existence of probable cause need not turn upon whether the driver is questioned in the police squad car or through the rolled-down window of the stopped automobile. In light of the totality of circumstances confronting the trooper, we conclude that he had probable cause to believe that unused marijuana was still present in Caves's automobile.[3] Consequently, the roadside search of the vehicle did not violate the fourth amendment, and the evidence obtained during that search was admissible.

### III.

█ Caves also contends that the second search of the automobile, conducted at the station house pursuant to a warrant, was unconstitutional because the warrant did not "particularly describ[e] the ... things to be seized," as mandated by the fourth

3. Since we hold that the trooper had probable cause to search the automobile because of facts independent from Caves's statements regarding the location of the marijuana, we do not address the question whether those statements could help form the basis for probable cause. Thus, we do not consider whether Caves was in custody and consequently should have been read his *Miranda* rights before being questioned. *See generally Berkemer v. McCarty,* 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (holding that roadside questioning of motorist stopped for routine traffic violation did not constitute "custodial interrogation" for purposes of *Miranda* rule); *Wilson v. Coon,* 808 F.2d 688 (8th Cir. 1987) (holding that driver involved in automo-bile accident was not in custody for purposes of *Miranda* when questioned by police at roadside while being restrained and examined by medical attendant). We also do not decide whether, even if Caves's statements were elicited in violation of *Miranda,* those statements could nevertheless be considered in establishing probable cause. *See generally* 1 W. LaFave & J. Israel, Criminal Procedure § 9.5(b), at 152–53 & n. 27.1 (Supp.1989) (noting that in light of *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), "it may be questioned as to whether the Supreme Court will uphold application of the fruits doctrine based on a *Miranda* violation").

amendment. Assuming but not deciding that a warrant was necessary to conduct this search,[4] we conclude that the warrant specified with sufficient particularity the items that were the object of the search.

The purpose of the fourth amendment prohibition of general warrants is to "ensure[ ] that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Maryland v. Garrison,* 480 U.S. 79, 107 S.Ct. 1013, 1017, 94 L.Ed.2d 72 (1987). Specifically, the particularity requirement serves to prevent " 'a general, rummaging in a person's belongings,' " *Andresen v. Maryland,* 427 U.S. 463, 480, 96 S.Ct. 2737, 2748, 49 L.Ed.2d 627 (1976) (quoting *Coolidge v. New Hampshire,* 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564 (1971)), and " 'the seizure of one thing under a warrant describing another,' " *id.* (quoting *Marron v. United States,* 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927)).

A search warrant is adequately worded if its description of the evidence to be seized is " 'sufficiently definite so as to enable the officer with the warrant to reasonably ascertain and identify the place to be searched and the objects to be seized.' " *United States v. Frederickson,* 846 F.2d 517, 519 (8th Cir.1988) (quoting *United States v. Muckenthaler,* 584 F.2d 240, 245 (8th Cir.1978)). "The underlying measure of adequacy in the description is whether given the specificity in the warrant, a violation of personal rights is likely." *United States v. Johnson,* 541 F.2d 1311, 1313 (8th Cir.1976) (per curiam). "The standard to be used in this determination is one of practical accuracy rather than technical nicety." *Id.*

The warrant used the following handwritten language to describe the items to be seized: "Controlled Substances/Documents such as but not limited to, invoices and receipts indicating possession of property." Caves argues that this wording authorized the trooper to search for documents indicating possession of *any* type of property, and that therefore the warrant was too generally worded to satisfy fourth amendment requirements. We disagree.

When read outside of the context of the warrant's printed form language, the handwritten description superficially supports Caves's argument. Upon closer examination of the printed wording that precedes the disputed language, however, it becomes clear that the warrant only authorizes the trooper to search for controlled substances and documents evidencing possession of such substances. The word "property" that was in the list of items to be seized appears to refer to the printed words "the following property and things:," which immediately precede the handwritten words "Controlled Substances." Interpreted in light of this preceding language, the word "property" in the list of items to be seized appears to be restricted in meaning to only those types of property specifically mentioned in the warrant, which are, namely, "Controlled Substances." *Cf. Andresen,* 427 U.S. at 480–81, 96 S.Ct. at 2748–49 (construing the term "crime" in the phrase "other fruits, instrumentalities and evidence of crime at this [time] unknown" to refer back to the crime under investigation, which was stated in the affidavit accompanying the warrant).

---

**4.** The Supreme Court has held that, in certain circumstances, if the police had probable cause to conduct a warrantless roadside search of an automobile, they need not obtain a warrant to search the automobile and its containers after the vehicle has been impounded at the station house. *See United States v. Johns,* 469 U.S. 478, 105 S.Ct. 881, 83 L.Ed.2d 890 (1985); *Florida v. Meyers,* 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984) (per curiam); *Texas v. White,* 423 U.S. 67, 96 S.Ct. 304, 46 L.Ed.2d 209 (1975) (per curiam); *Chambers,* 399 U.S. 42, 90 S.Ct. 1975. Although none of these cases appears to have involved the degree of dismantling of the automobile as took place when the trooper removed the metal sheet from the trunk, the Court has permitted warrantless automobile searches that have resulted in the opening of air vents under the dashboard, *see Michigan v. Thomas,* 458 U.S. 259, 102 S.Ct. 3079, 73 L.Ed.2d 750 (1982) (per curiam), the opening of a sealed compartment under the dashboard, *see Chambers,* 399 U.S. 42, 90 S.Ct. 1975, and the ripping of upholstery on the lazyback of a rumble seat, *see Carroll,* 267 U.S. 132, 45 S.Ct. 280.

Caves tries to analogize this case to *VonderAhe v. Howland*, 508 F.2d 364 (9th Cir. 1974), which held that a warrant obtained by the Internal Revenue Service to search an individual taxpayer's business records did not have an adequate description of which documents were to be seized. If the purpose of the search of Caves's automobile had been to look through business records to find incriminating evidence, perhaps we would require more particular wording in the description of the types of documents to which the search was directed. Here, however, the object of the search was to discover contraband hidden in the secret compartment of an automobile, not to sift through mounds of personal papers as would be involved in an IRS investigation of an individual. We have recognized that "the degree of specificity required [in a search warrant] is flexible and may vary depending on the circumstances and the type of items involved." *Muckenthaler*, 584 F.2d at 245. Accordingly, we find it reasonable to interpret the handwritten description of documents to be seized to encompass only those that pertain to the defendants' ownership of controlled substances. When the handwritten wording of the search warrant is read in conjunction with the preceding form language, the warrant's description of the items to be seized is sufficiently particularized to satisfy fourth amendment requirements. Thus, the motion to suppress the evidence seized during the station house search of the automobile was properly denied.

## IV.

Finally, we consider Gorman's contention that the police unconstitutionally conducted two warrantless inventory searches of her purse.

Besides the automobile exception, another exemption from the fourth amendment warrant requirement is that recognized for inventory searches of containers or articles in the possession of an arrested person. A warrantless inventory search is constitutionally permissible if (1) the individual whose possession is to be searched has been lawfully arrested, *see Illinois v. La-fayette*, 462 U.S. 640, 643, 103 S.Ct. 2605, 2608, 77 L.Ed.2d 65 (1983), and (2) the search satisfies the fourth amendment standard of reasonableness, that is, it is conducted "as part of the routine procedure incident to incarcerating an arrested person" and "in accordance with established inventory procedures," *id.* at 648, 103 S.Ct. at 2611; *see also United States v. Woolbright*, 831 F.2d 1390, 1394 (8th Cir. 1987). Gorman contends that her initial detention at the station house was not a lawful arrest, and that even if she was lawfully placed into custody, the two searches of her purse were unreasonable. We disagree.

Although the trooper testified that he detained Gorman at the station house only for "investigation purposes," it is clear that Gorman was arrested for purposes of fourth amendment analysis when she was transported to the police station. *See Hayes v. Florida*, 470 U.S. 811, 816, 105 S.Ct. 1643, 1646–47, 84 L.Ed.2d 705 (1985); *Dunaway v. New York*, 442 U.S. 200, 212, 99 S.Ct. 2248, 2256, 60 L.Ed.2d 824 (1979). This detention was lawful only if, in the totality of the circumstances, there was probable cause for the trooper to make an arrest. *See id.* at 212–13, 99 S.Ct. at 2256–57; *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964); *United States v. Rose*, 731 F.2d 1337, 1342–43 (8th Cir.1984).

Probable cause exists for an arrest if the "facts and circumstances within the [law enforcement] officer's knowledge ... are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979). Although a "bare suspicion" of criminal activity is not sufficient to establish probable cause, the police are not required to have enough evidence to justify a conviction before they make a warrantless arrest. *See Brinegar*, 338 U.S. at 175, 69 S.Ct. at 1310–11; *see also Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590–91, 21 L.Ed.2d 637 (1969) ("[T]he probability, and not a prima

facie showing, of criminal activity, is the standard of probable cause."). Moreover, "[t]he police may, based on their law enforcement experience, draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous." *United States v. Wajda,* 810 F.2d 754, 758 (8th Cir.), *cert. denied,* 481 U.S. 1040, 107 S.Ct. 1981, 95 L.Ed.2d 821 (1987).

■ Gorman argues that at the time she was taken to the station house, the trooper did not have probable cause to believe that she had committed or was committing any crime. Although the patrolman found two bags of suspected marijuana under the console next to Gorman's seat, neither she nor Caves made any statement to the police suggesting that the drugs belonged to her or that she had knowledge of their presence in the automobile. Also, Gorman points out that unlike some cases in which probable cause existed to arrest the female companion of a drug trafficker, *see, e.g., United States v. Reiner Ramos,* 818 F.2d 1392 (8th Cir.1987), here the trooper had no information from a third-party informant that Gorman was being utilized by Caves to help transport drugs. Gorman contends, essentially, that she was merely present in the LTD and that this fact alone was not enough to establish probable cause for her arrest.

We recognize that " 'mere association with a known or suspected criminal, or mere presence in that person's automobile, does not create probable cause to arrest.' " *United States v. Clark,* 754 F.2d 789, 791 (8th Cir.1985) (quoting *United States v. Everroad,* 704 F.2d 403, 406 (8th Cir.1983)). In this case, however, other factors might have indicated to a reasonable police officer that Gorman was more than just an innocent passenger being given a ride.

After the patrolman completed his roadside search of the vehicle, he was aware of several facts indicating that it was being used to transport illegal drugs in interstate commerce for distribution purposes. The automobile bore Oklahoma license plates and had been travelling north on the interstate toward the nearby St. Paul–Minneapolis metropolitan area. The cigarette papers and two bags of suspected marijuana in the front console could have been explained as being merely for recreational use of the driver. But after finding the can of aerosol disinfectant, which the trooper knew is used to conceal the odor of large amounts of controlled substances, and the digital scale, which was hidden in a box labelled "telephone," the patrolman had probable cause to believe that a substantial amount of controlled substances was stored in the secret compartment behind the sheet-metal trunk enclosure. The automobile's occupants would not have had ready access for personal use to drugs stored behind the metal sheet.

When the trooper found Gorman's belongings jointly housed with Caves's in the trunk, it was reasonable for the patrolman to believe that Gorman had been Caves's travelling companion for most or all of the trip from Oklahoma. The presence of Gorman's luggage in the trunk also indicated that she had access to the trunk and was aware of the metal sheet and the items hidden in the spare tire compartment behind it. In addition, the patrolman may have been aware that man-and-woman combinations are sometimes used by interstate drug traffickers to give the appearance of a vacationing couple and therefore attract less suspicion. *See generally United States v. Adams,* 799 F.2d 665, 672–73 (11th Cir.1986) (upholding conviction for possession of marijuana when female defendant's presence in motor home containing marijuana "was essential to the success of the ruse—to give the appearance of a couple vacationing in a motor home"), *cert. denied,* 481 U.S. 1070, 107 S.Ct. 2464, 95 L.Ed.2d 873 (1987). By his own actions of leaving the keys in the ignition when he got out of the automobile and asking Gorman to retrieve the insurance papers from the glove compartment, Caves indicated to the patrolman that he trusted and relied upon Gorman.

While the information known by the trooper when he took Gorman to the station house may not have been enough evidence to persuade a jury to convict her of

any crime, it was at least sufficient to establish probable cause that she was either in possession of controlled substances intended for interstate distribution or was aiding and abetting Caves's possession of such substances.

 Possession of a controlled substance may be joint and constructive. *See Wajda,* 810 F.2d at 761. Constructive possession exists when the defendant has knowledge and control of the illegal drugs. *See id.* Stated another way, "a person has constructive possession if he has 'ownership, dominion or control over the contraband itself, *or dominion over the premises in which the contraband is concealed.'"* *United States v. Brett,* 872 F.2d 1365, 1369 (8th Cir.1989) (emphasis in original) (quoting *United States v. Matra,* 841 F.2d 837, 840 (8th Cir.1988)).

The crime of aiding and abetting is established if the defendant "associated herself with the unlawful venture, ... participated in it as something she wished to bring about, ... and sought by her action to make it succeed." *United States v. Larson,* 760 F.2d 852, 858 (8th Cir.), *cert. denied,* 474 U.S. 849, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985). To be convicted of aiding and abetting, the defendant must have engaged in " 'some affirmative participation ... which at least encourages the perpetrator,' " and not simply have been present at the crime and associated with the person engaged in the illegal activity. *See United States v. Anziano,* 606 F.2d 242, 245 (8th Cir.1979) (quoting *United States v. Knife,* 592 F.2d 472, 476 (8th Cir.1979)).

In the circumstances, we are persuaded that a reasonable police officer could conclude that Gorman was knowingly playing a role in the possession and interstate transportation of illegal drugs, that her detention was appropriate, and that the seizure of her purse was pursuant to a lawful arrest.

The facts of this case stand in contrast with those in *United States v. Everroad,* 704 F.2d 403 (8th Cir.1983), which held that probable cause did not exist to arrest the defendant who was a passenger in a known drug dealer's automobile less than an hour before the dealer sold marijuana to an undercover agent. The dealer told the agent that he would deliver some cocaine within one-half hour, and the agent knew that the defendant was staying in a nearby motel. Here, unlike in *Everroad,* additional considerations were present that have been recognized as important factors for establishing probable cause to arrest an individual associated with another engaged in suspected criminal activity. First, the association between Caves and Gorman was contemporaneous with the time of the criminal activity. *See Clark,* 754 F.2d at 791; *United States v. Hillison,* 733 F.2d 692, 697 (9th Cir.1984). Second, the nature of the criminal activity was such that it could hardly have been carried out without Gorman's knowledge. *See Clark,* 754 F.2d at 791; *Hillison,* 733 F.2d at 697. Gorman's luggage in the trunk indicated that she was aware of the secret compartment. Her apparent travel with Caves for several hundred miles was further evidence that she must have been privy to the illegal purpose of the trip.

We now turn to Gorman's argument that the inventory searches were unreasonable.

Gorman has failed to offer any evidence that the inventory searches were executed other than in accordance with routine administrative procedure or were conducted in bad faith. Rather, she contends that the police could have accomplished the objectives of the inventory searches—prevention of theft and protection of the police from claims of theft—simply by storing the purse in a locker. The Supreme Court has rejected this argument, determining that courts should not second-guess the method by which law enforcement officials inventory items in the possession of arrested persons. *See Lafayette,* 462 U.S. at 648, 103 S.Ct. at 2610–11. In the absence of evidence that these inventory searches did not satisfy the standard set forth in *Illinois v. Lafayette* or were executed in bad faith, we conclude that the searches did not violate the fourth amendment, and that the evidence found during those searches is

admissible. *See Woolbright,* 831 F.2d at 1394–95.

### V.

In sum, the district court was not clearly erroneous in adopting the magistrate's denial of the defendants' motions to suppress evidence found during the searches of the automobile and Gorman's purse. Therefore, the district court's rulings on evidentiary matters and the convictions of the defendants are affirmed.