# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1347

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the Northern |
| | * District of Iowa. |
| James Alton Turner, Jr., | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted: October 12, 2005
Filed:  December 15, 2005 (corrected 12/20/05)

_____

Before ARNOLD, BOWMAN, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

James Alton Turner, Jr. pled guilty to possession with intent to distribute marijuana within 1,000 feet of a school after a prior felony drug offense, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), 851, and 860, and to possession of a firearm as an armed career criminal, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Under his plea agreement he preserved his right to seek to suppress evidence and to appeal an adverse ruling by the court. The district court denied his motion to suppress and sentenced him to 210 months. Turner appeals, arguing that the district court erred in denying his motion and in sentencing. We affirm.

Waterloo police were told by a confidential informant on February 2, 2004, that Turner was selling marijuana from his residence and from the New World Lounge Bar in Waterloo, Iowa. Sergeant Richard Knief went to the bar to investigate, saw that Turner was present, and attempted contact with him. When Turner instead moved to leave the bar, he was arrested for interfering with official acts. Knief observed an intense marijuana smell emanating from Turner, and the officers found a large sum of money on him in amounts consistent with drug proceeds. With the confidential informant's tip in mind, they asked Turner for permission to search his house but he declined.

Officer Adam Galbraith then prepared an application for a search warrant for Turner's house. His supporting affidavit stated that Sargent Knief had advised him that he had received information from a confidential informant who had seen Turner at the New World Lounge with a package of marijuana prepared for sale and who also reported that Turner had sold marijuana from his residence within the last 72 hours. Galbraith stated in addition that Lakisha and Quanisha Owens had admitted to officers in the spring of 2003 that Turner was their marijuana supplier. The affidavit included statements relating to Knief's encounter with Turner at the bar, reported that he had smelled an intense marijuana odor on Turner, that Turner had attempted to evade contact with him, and that Turner had possessed a large quantity of cash in suspicious amounts. Other information learned by the police was listed, including that the utilities at 2303 Clearview Street in Waterloo were listed in Turner's name, that Turner had previously listed this address as his residence during prior arrests, that the vehicle registered to him had been seen at this residence, and that Turner had previously been arrested for possession of marijuana and possession of cocaine.

An informant attachment to the affidavit was prepared by Sergeant Knief, stating that the confidential informant was a mature individual with a reputation for truthfulness and no motive to falsify information, that the informant had previously

provided information leading to an arrest, and that the current information had been corroborated by law enforcement personnel.

The application was taken on the same evening to an Iowa district court judge who issued a search warrant. Officers then executed the warrant and searched Turner's house. They seized a brown suitcase containing a plastic bag with approximately 1,162.5 grams of marijuana and a Sunbeam digital scale. They also found mail addressed to Turner and a handgun under his bed with a loaded magazine.

Turner moved to suppress the evidence obtained at his residence, arguing that the issuance of the warrant infringed upon his constitutional rights because it was issued without probable cause. He argued that the warrant application incorrectly stated that he had attempted to evade arrest at the New World Bar and that at the time of the arrest he had in his possession a suspicious quantity of bills. He also complained that the warrantless arrest violated his constitutional rights and that the contents of the attachment regarding the confidential informant's veracity was false and that Sergeant Knief knew that when he attested to it. For purposes of the probable cause determination, the government agreed to excise the informant attachment and the evidence obtained at the New World Lounge except for Knief's observation of the marijuana odor emanating from Turner. The government also indicated it would not assert a good faith reliance on the warrant under United States v. Leon, 468 U.S. 897 (1984).

A magistrate judge[1] presided at the suppression hearing and issued a report and recommendation to the district court to deny the motion. The magistrate judge concluded that probable cause was established by the remaining portions of the warrant affidavit, noting that it contained personal observations from a confidential

_____

[1]The Honorable John A. Jarvey, United States Magistrate Judge for the Northern District of Iowa.

informant whose information had been independently corroborated by authorities, as well as Quanisha and Lakisha Owens' report that Turner had supplied them with marijuana and information about Turner's previous arrests for possession of marijuana and cocaine. The report and recommendation was adopted by the district court,[2] which denied Turner's motion.

Turner had meanwhile pled guilty to both counts charged in the indictment – possession of marijuana within 1,000 feet of a school after a prior drug felony offense and possession of a firearm as an armed career criminal – conditioned on his right to appeal from an adverse ruling on his suppression motion. In his plea agreement he also agreed that he had four previous convictions for crimes of violence and/or controlled substance offenses as defined in USSG § 4B1.1, the career offender guideline, and that he qualified as an armed career criminal under 18 U.S.C. § 924(e) because of the same four offenses. His signed agreement listed the four qualifying offenses as a 1986 felony conviction for burglary in the second degree, two 1987 felony convictions for robberies in the second degree while armed with a dangerous weapon, and a 1991 felony conviction for possession of crack cocaine with the intent to deliver.

In the plea agreement the parties set out their own nonbinding guideline calculations. Turner agreed that he would be subject to an adjusted offense level of 32 if he qualified as a career offender under USSG § 4B1.1, but he hoped to receive a two level downward adjustment for acceptance of responsibility. Turner also agreed that he qualified as an armed career criminal under U.S.C. § 924(e), making him subject to increased penalties on the gun count under USSG § 4B1.4 and an adjusted offense level of 34. The parties agreed that a two level downward adjustment for

_____

[2]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, presiding.

acceptance of responsibility would also be appropriate on this count, resulting in a total offense level of 32. They stipulated to concurrent sentences.

The district court[3] sentenced Turner after orally stating that his total offense level for each offense was 32, which together with a criminal history category VI yielded a guideline range of 210 - 262 months. It noted that the statutory maximum for the drug conviction was 240 months and the statutory minimum for the firearm conviction was 180 months. Although Turner had stipulated in the plea agreement that he qualified as an armed career criminal, the district court considered his argument at sentencing that he had not been convicted of three requisite predicate offenses. It then determined that his two 1987 robberies and his 1991 drug offense were predicate offenses within the meaning of U.S.C. § 924(e) and USSG § 4B1.4. It sentenced Turner both as a career offender and an armed career criminal and imposed concurrent sentences of 210 months on each count.

Turner argues on appeal that the redacted warrant application lacked probable cause, that the court erred by sentencing him as an armed career criminal, and that he is entitled to resentencing because the district court erroneously calculated his adjusted offense level for the drug conviction.[4] The United States responds that the confidential informant's tip was sufficiently corroborated to establish probable cause. It maintains that the district court correctly found Turner was an armed career criminal because he pled guilty as an armed career criminal and had actually been convicted of four qualifying offenses and that any error in calculating his guideline range for his

___

[3]The Honorable Mark W. Bennett, Chief Judge for the United States District Court for the Northern District of Iowa, presiding.

[4]Turner filed a supplemental pro se brief discussing these and other points. His additional claims lack merit, including a claim that the warrant was invalid because the application had not reported that a search of his residence in September 2003 had revealed nothing illegal. Any claim for ineffective assistance of counsel should be brought by motion under 28 U.S.C. § 2255 rather than on direct appeal.

drug conviction was harmless because he received two concurrent sentences of equal length.

Turner claims that his Fourth Amendment rights were violated by a search under an invalid warrant. He contends that the district court erred by not suppressing the evidence from the search of his residence because the information used to establish probable cause for the warrant was not independently reliable and was not sufficiently corroborated. He argues that information supplied by the Owens sisters nearly one year before the warrant application was stale and should not have been considered on the issue of probable cause. He also asserts that his prior arrests without conviction should not have been included in the affidavit.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," and it requires a showing of probable cause to support a search warrant. A court's determination of whether probable cause exists to support a warrant requires a consideration of the totality of the circumstances, Illinois v. Gates, 462 U.S. 213, 230 (1983), and a warrant is supported by probable cause if "there is a fair probability that contraband or evidence of a crime will be found in the place to be searched." Id. At 236. When a search warrant application has been redacted as in this case, the sufficiency of the warrant affidavit is evaluated without the redacted information. United States v. Coleman, 349 F.3d 1077, 1083 (8th Cir. 2003). We review a district court's factual findings for clear error and its conclusion that a search did not violate the Fourth Amendment de novo. United States v. Newton, 259 F.3d 964, 966 (8th Cir. 2001).

Since the entire informant's attachment had been redacted,"some independent verification [was needed] to establish the reliability of the information" supplied by the informant. United States v. Taylor, 106 F.3d 801, 803 (8th Cir. 1997). Police officers developed additional information through their independent investigation

-6-

which corroborated the informant's story about having seen Turner with drugs at a local bar and selling multiple bags at his residence. They verified that the informant had provided Turner's correct address by examining utility records and by observing his registered vehicle at that location. United States v. Ketzeback, 358 F.3d 987, 992 (8th Cir. 2004). Sergeant Knief also smelled an intense odor of marijuana emanating from Turner during his encounter with him at the bar, See United States v. Caves, 890 F.2d 87, 90 (8th Cir. 1989), but Turner argues that the officer's sensory impression is of limited value. Turner points out that Knief sensed the smell at a public bar rather than in an automobile like in Caves or while smelling an exterior air vent like in United States v. Gerard, 362 F.3d 484 (8th Cir. 2004). Regardless of the place where Sergeant Knief encountered Turner, his statement that Turner smelled strongly of marijuana supports the probable cause determination.

Turner complains that the information provided by Quanisha and Lakisha Owens in the spring of 2003 was stale and not relevant on the issue of probable cause in February 2004 because too much time had passed. "There is no bright line test for determining when information is stale." United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993). Probable cause "cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." Id. The Owens sisters told authorities that Turner had supplied them with marijuana and that he was a marijuana dealer. Their admissions remained relevant to the probable cause determination because their information was similar to the confidential informant's report, making it more probable that illegal drugs could be found at Turner's residence. Given all of the circumstances set forth in the redacted affidavit, but excepting Turner's drug related arrests, we conclude that there was probable cause that illegal drugs would be found at Turner's residence. The district court did not err in denying the motion to suppress.

Turner also contends that he is entitled to resentencing because the district court sentenced him under the Armed Career Criminal Act (the Act), 18 U.S.C.

§ 924(e), and because the court erred by incorrectly calculating the total offense level for his drug conviction.

A defendant qualifies as an armed career criminal if he has three prior convictions for a "violent felony or a serious drug offense." 18 U.S.C. § 924(e). Turner admits that his 2001 conviction for possessing cocaine is a predicate offense for treatment as an armed career criminal, but he argues that his 1986 burglary conviction was not a violent felony and that his 1986 robberies should be treated as one offense rather than two. According to him, he has only two predicate offenses and the district court erred in treating the robberies as separate offenses. 18 U.S.C. § 924(e). We review a district court's factual determinations for clear error and its legal conclusions de novo. United States v. Deroo, 304 F.3d 824, 828 (8th Cir. 2004).

Offenses are separate convictions under 18 U.S.C. § 924 if they were "committed on occasions different from one another," and if they arose out of separate and distinct criminal episodes. United States v. Hammell, 3 F.3d 1187, 1191 (8th Cir. 1993). During Turner's robberies in August 1986, he threatened different victims with a sawed off shotgun. Both robberies were committed to raise money to pay off his drug debt to Herbie Speller, Jr., who also participated in the holdups. On August 16 Turner entered a Texaco gas station in Waterloo with his shotgun and ordered the attendant to put money in a paper bag and then locked him in the trunk of his own car; the clerk managed to escape by pushing out the back seats of the car. Three days later Turner held up Saylor's South Side Mart in Hudson, Iowa and then forced two employees into the trunk of one of their vehicles; they escaped when people heard them pounding and called authorities.

Turner argues that the two convictions should be treated as a single offense because he employed the same modus operandi with the same confederate and similar motive. He claims that the state treated the offenses as one because he had been arrested for both on the same date, one prosecutor handled both, his motions were

-8-

considered in the same hearing, and he was sentenced for both on October 5, 1986. He admits that the state never entered a formal order of consolidation but asserts that a functional analysis should be adopted because the Iowa Rules of Criminal Procedure do not contain a consolidation provision. See e.g. Buford v. United States, 532 U.S. 59, 61 (2001).

The government responds that the offenses were sufficiently distinct to be considered as separate criminal episodes. It points out that the robberies occurred in different cities, that they involved different victims, and that they were separated by three days. See United States v. Long, 320 F.3d 795, 802 (8th Cir. 2003). The government asserts that "[s]ection 924(e) does not require separate prosecutions, just that the offenses occurred at different times," United States v. Gibson, 928 F.2d 250, 254 (8th Cir. 1991), so factors such as a combined motion hearing and concurrent sentences are not determinative.

We agree that the district court did not err by finding the robberies to be separate offenses and by sentencing Turner as an armed career criminal. There was never an order consolidating the cases. Moreover, the convictions were committed in different towns on different days, had different victims, and involved distinct criminal episodes. Hammell, 3 F.3d at 1191. Since the two robbery convictions and the drug conviction are qualifying offenses under the Act, 18 U.S.C. § 924(e) and USSG § 4B1.4, we need not discuss whether the burglary conviction was a violent felony or whether Turner waived his right to appeal this issue.

Turner also argues in his pro se brief that he is entitled to resentencing because he claims the district court misstated the total offense level for his drug conviction to be 32 instead of 30. He argues that the guideline range resulting from a level 30 would have been 168 - 210 months for the drug conviction and that he would have received a lower sentence had the court used the correct total offense level adjusted for his acceptance of responsibility. Turner overlooks the fact, however, that the

court's statement of reasons in its judgment indicated that it had adopted the guideline calculations in the presentence report (which set the total offense level for the drug count at 30). In any event his 210 month sentence on the drug count was within the guideline range regardless of whether the total offense level was 32 or 30. Moreover, the court found that his total offense level for the gun conviction was 32 with a resulting guideline range of 210 - 262 months. Turner does not maintain that the court made any calculation error in relation to that count, and the court imposed concurrent sentences on the two counts of conviction. We conclude that Turner has not shown sentencing error entitling him to resentencing.

For these reasons we affirm the judgment of the district court.

_____