# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-1676

_____

United States of America

*Plaintiff - Appellee*

v.

Nathaniel Crawford

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Southern

_____

Submitted: October 20, 2023
Filed: February 16, 2024

_____

Before SMITH, Chief Judge, LOKEN and COLLOTON, Circuit Judges.

_____

SMITH, Chief Judge.

Nathaniel Crawford and his ex-girlfriend had a domestic dispute in the parking lot of an apartment complex. The dispute was heated, prompting concerned residents to call 911 and report that Crawford was threatening to shoot a person, shoot at a person's home, or burn down the complex. An officer was dispatched to the scene, but by the time she arrived, Crawford had fled. The officer spoke with the ex-girlfriend and advised her to call 911 if Crawford returned. Later that night,

Crawford returned and threatened his ex-girlfriend with a firearm. She called 911, and Crawford fled again. Multiple officers rushed to the scene, canvassed the area, and found Crawford and his vehicle in a nearby parking lot. Crawford did not have a firearm on his person, and he refused the officers' request for consent to search his vehicle. Two officers went to the vehicle, peered through the windows, and saw a wooden object protruding from the center console. Based on its appearance, they inferred that the protrusion was the grip of the reported firearm. The officers took Crawford's keys, unlocked and entered the vehicle, opened the center console, and found the firearm inside.

Following these events, the federal government charged Crawford with being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g), based on his prior felony and misdemeanor domestic violence convictions. Crawford moved to suppress the firearm, arguing that officers lacked probable cause to search his vehicle. The district court[1] denied the motion, Crawford entered a conditional guilty plea, and he now appeals. We agree with the district court that the 911 calls, the statements of the ex-girlfriend, and the wooden object established probable cause for a vehicle search. We thus affirm the denial of the motion to suppress.

## I. *Background*

Around 8:00 p.m., emergency operators began to receive 911 calls, which reported a domestic dispute in the parking lot of an apartment complex. A caller reported that a man and woman were arguing and that the man was threatening to shoot someone or shoot at someone's home. An officer was dispatched to the scene. While the officer was en route, another 911 caller reported that a man, arguing with

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, adopting the report and recommendation, as modified, of the Honorable Veronica L. Duffy, United States Magistrate Judge for the District of South Dakota.

neighbors, had threatened to burn down the building. Then, he drove away at a high speed.

When the dispatched officer arrived at the complex, she met and spoke with the woman mentioned in the earlier 911 call as arguing with a man. The woman, Christina Bryant, identified the man as Nathaniel Crawford. Bryant told the officer that Crawford was her ex-boyfriend and that he had previously attacked her with a metal pipe. That night, Bryant and Crawford had been arguing again before Crawford sped away in his vehicle. The officer advised Bryant to call 911 if Crawford returned to the complex. The officer departed the scene.

The officer parked a short distance away and began to type her report on the incident. While doing so, she discovered an eight-day-old police bulletin, which advised officers that a man named Nathaniel Crawford had attacked a woman with a metal pipe. The bulletin instructed officers to take Crawford into custody should they encounter him.

While the officer worked on her report, Bryant called 911. Crawford had returned. He stood outside the door of Bryant's apartment and was threatening her with what she believed to be a firearm. The original officer raced back to the complex. Additional officers were dispatched as well.

By the time officers arrived, Crawford had fled the complex. Bryant told officers that Crawford was wearing a white t-shirt and blue jeans and was driving a red Chevrolet Trailblazer. Bryant did not know Crawford's whereabouts. An officer radioed that there was a police bulletin for Crawford's arrest. The officer described Crawford and his vehicle. Police dispatch notified officers in the area that Crawford was possibly armed and dangerous. Several minutes later, an officer radioed that he had located a red Chevrolet Trailblazer, believed to be Crawford's vehicle, several blocks away from the apartment complex. The vehicle was parked in a mostly empty parking lot. Officers responded.

When officers reached the lot, Crawford was standing near his vehicle. Two officers ordered Crawford to surrender, and he obeyed their commands. Three more officers arrived. While Crawford was being handcuffed, officers performed a safety sweep of the area and glanced into the vehicle's windows to see if any occupants were inside. The vehicle was unoccupied. One officer asked Crawford if he was carrying any weapons. Crawford replied in the negative. A second officer demanded, "Where's the gun at, man?" R. Doc. 52, at 5. Crawford again denied that there was a firearm. Incident to the arrest, officers searched Crawford for weapons but found none. They asked Crawford for permission to search his vehicle. He declined.

One officer then remarked that he smelled the odor of "weed" near the vehicle and that the odor would likely provide probable cause for a vehicle search. R. Doc. 40, at 5–6.[2] Two more officers agreed. They said that they could also detect the distinct odor of marijuana and that Crawford's vehicle seemed to be the source. A drug detection dog was on the scene, but officers did not use it. The dog was not trained to detect marijuana. At least two other dogs in the department were so trained. Officers did not call either of these dogs to the scene.

An officer approached the vehicle and began to peer through its windows to see if there was any marijuana or drug paraphernalia inside. When he bent down and looked through the driver's window, he saw a wooden object protruding from under the lid of the center console. It appeared to be the grip of a firearm. He called over another officer and asked, "[I]n that console, see the wooden grip?" *Id.* at 7. The second officer saw the wooden grip and agreed that it was likely a firearm. Officers at this time were unaware of Crawford's criminal history and his status as a prohibited person under federal law. Other officers urged their colleagues to proceed with a search, saying that the marijuana odor, by itself, was sufficient.

---

[2]*See United States v. Williams*, 955 F.3d 734, 737 (8th Cir. 2020) ("We have repeatedly held that the odor of marijuana provides probable cause for a warrantless search of a vehicle under the automobile exception.").

Officers took Crawford's keys and used them to open the vehicle. An officer opened the lid of the center console, and the wooden object turned out to be a firearm grip, as officers had already inferred. The officers replaced the lid as they found it and photographed the protrusion.

The vehicle search uncovered no marijuana or drug paraphernalia. The officers never discovered the source of the odor on which they had commented.

After the arrest and vehicle search, authorities discovered that Crawford had prior felony and domestic violence misdemeanor convictions. Accordingly, the federal government charged Crawford with being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g).

At the district court, Crawford moved to suppress the firearm and derivative evidence as fruit of the poisonous tree. The court denied the motion. It concluded that the officers' identification of the wooden protrusion as a firearm supported probable cause for a vehicle search. Alternatively, the court found that officers' detection of marijuana odor in the vicinity of Crawford's vehicle was credible, and it concluded that this odor supported probable cause. The district court also cited the plain view doctrine as validating the search. Because it concluded the search was lawful, the court did not suppress evidence as fruit of the poisonous tree. After this ruling, Crawford entered a conditional guilty plea.

## II. *Discussion*

On appeal, Crawford challenges the district court's denial of his motion to suppress. "We review the denial of a motion to suppress *de novo*, and the district court's factual findings for clear error." *United States v. White*, 41 F.4th 1036, 1038 (8th Cir. 2022). We begin with the text of the Fourth Amendment:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. This Amendment recognizes that people have a fundamental right to be secure in the use and enjoyment of their property against unreasonable governmental intrusion. *See Payton v. New York*, 445 U.S. 573, 584–85 (1980); *Gouled v. United States*, 255 U.S. 298, 303–04 (1921), *abrogated on other grounds by Warden v. Hayden*, 387 U.S. 294 (1967); 3 Joseph Story, *Commentaries on the Constitution of the United States* § 1895, at 748 (1833).

For an automobile or other vehicle, the general rule is that officers may conduct a search, without a warrant, if they have probable cause to believe that evidence of a crime or contraband will be found inside. *United States v. Pacheco*, 996 F.3d 508, 513 (8th Cir. 2021).[3] "[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). We consider all "the facts and circumstances known by the police when they began the search," or "the totality of the circumstances," and determine whether officers "of reasonable caution" could have inferred that the target vehicle would contain the evidence or contraband that officers sought. *United States v. Caves*, 890 F.2d 87, 90 (8th Cir. 1989) (internal quotation marks omitted).

Based on this record, the officers' search was supported by probable cause. First, multiple residents called 911 and reported that Crawford was threatening to shoot someone, shoot at someone's home, or burn down the apartment complex. Second, Bryant reported that Crawford returned and threatened her with what she thought was a firearm. Third, after officers arrested Crawford, two of them looked through the driver's window and saw a wooden object protruding from the center console. The combination of the 911 calls, the victim's statements, and the wooden object established probable cause to search Crawford's vehicle for criminal evidence, namely the reported firearm that Crawford had potentially used to commit

---

[3]Courts often call this the "automobile exception" or the "vehicle exception" to the warrant requirement. *See, e.g.*, *Collins v. Virginia*, 584 U.S. 586, 588 (2018); *California v. Carney*, 471 U.S. 386, 394 (1985).

an aggravated assault against Bryant. *See* S.D. Codified Laws § 22-18-1.1(5) ("Any person who . . . [a]ttempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm . . . is guilty of aggravated assault.").

In this appeal, Crawford contends that searching his vehicle for a *firearm* was unreasonable because officers were originally investigating and arresting him for striking Bryant with a *metal pipe* a week earlier. We reject this argument because, when officers began their search, they could have justifiably believed an aggravated assault with a firearm had just occurred. Officers could have reasonably inferred, from the facts they collectively knew, that their search would result in evidence related to this just-committed second crime. *See United States v. Gonzales*, 220 F.3d 922, 925 (8th Cir. 2000) ("Probable cause may be based on the collective knowledge of all of the law enforcement officers involved in an investigation if, as here, some degree of communication exists between them."). A firearm in the vehicle would corroborate the 911 calls and Bryant's statements, and it would tend to prove that Crawford had committed an aggravated assault against Bryant.

Crawford also contends that searching his vehicle for a firearm was unreasonable because, at the time, officers did not know Crawford was a prohibited person under federal law. We reject this argument because the suspected crime that supported the search, S.D. Codified Laws § 22-18-1.1(5) (aggravated assault with a deadly weapon), need not be the same crime with which Crawford was eventually charged, 18 U.S.C. § 922(g) (unlawful possession of a firearm). The government may search for evidence of one crime but, based on what it later learns, ultimately charge the suspect with a different crime. *See United States v. Perry*, 925 F.2d 1077, 1080 (8th Cir. 1991) ("That the evidence of another crime was thereby discovered does not make the probable cause to search . . . any less reasonable.").

Crawford further contends that the visible portion of the firearm that protruded from the center console was too small for officers to have reasonably believed that it was a firearm. We reject this argument as well. Viewing the facts in their totality, as we must, officers' observation of the suspected firearm grip did not stand in isolation as their justification for the search. *See Caves*, 890 F.2d at 90. Here, officers

were not merely confronted with a vehicle, an ajar console, and a mysterious wooden object. They already knew about the 911 calls and Bryant's report of Crawford's menacing conduct. All of these facts, collectively, established probable cause to search the vehicle. When officers arrested Crawford, they already had strong reasons to believe he was armed. Assuming probable cause did not yet exist, it clearly existed after the two officers spotted the wooden object. The inferential step—connecting the earlier reports about Crawford's firearm to the object now visible—did not require much imagination. Given the totality of the circumstances, the likelihood that the object would turn out to be a firearm justified the search.[4]

Because probable cause existed based on the 911 calls, Bryant's statements, and the wooden object, we do not need to address the parties' remaining arguments about the curious marijuana odor and the plain view doctrine. Finally, the tree in this case was not poisonous, so its fruit was admissible.

---

[4]Crawford also suggests that he never committed an aggravated assault against Bryant because Bryant never feared for her safety. *See, e.g.*, Appellant's Br. at 16 ("Ms. Bryant stated she didn't think Mr. Crawford would follow through on the threats . . . ."). The fact that Bryant called 911 when Crawford returned belies any suggestion that she was never fearful. More importantly, a subjective state of fear on the part of the victim is not required for an aggravated assault under South Dakota law. The only relevant state of mind is that of the offender. *See* S.D. Codified Laws § 22-18-1.1(5) ("Any person who . . . [a]ttempts by physical menace with a deadly weapon to put another in fear of imminent serious bodily harm . . . is guilty of aggravated assault."); *State v. Ahmed*, 973 N.W.2d 217, 221 (S.D. 2022) ("Actual fear of imminent serious bodily harm is not an essential element of the offense." (quoting *State v. LaCroix*, 423 N.W.2d 169, 170 (S.D. 1988))). "[T]he main focus is on the *conduct* of the accused." *State v. Miland*, 858 N.W.2d 328, 332 (S.D. 2014) (interpreting aggravated assault, not involving a weapon, under S.D. Codified Laws § 22-18-1.1(1)); *see generally State v. Stapleton*, 387 N.W.2d 28 (S.D. 1986) (affirming a conviction under the statute, even though the victim "was totally unaware that [the defendant] had a gun").

## III. *Conclusion*

Taken together, the concerned residents' 911 calls, the ex-girlfriend's report of Crawford's menacing conduct, and the officers' identification of a wooden object protruding from the center console established probable cause to search Crawford's vehicle. For this reason, we affirm the denial of the motion to suppress.

_____