Scott YANKE, Plaintiff,

v.

The CITY OF DELANO, by the City Council of the City, Consisting of Jon Steinmetz, Mary Emery, Holly Schrupp, Tom Emmer, Joseph McDonald, in their official and individual capacities, Defendants.

No. Civ.03—6180 JNE/JGL.

United States District Court, D. Minnesota.

March 31, 2005.

Daryl A. MacLean, MacLean Law Office, Delano, MN, for Plaintiff Scott Yanke.

Susan Tindal, and Jon K. Iverson, Iverson Reuvers, LLC, Bloomington, MN, for City of Delano, Jon Steinmetz, Mary Emery, Holly Schrupp, Tom Emmer, and Joseph McDonald.

## ORDER

ERICKSEN, District Judge.

Scott Yanke (Yanke) brought this action against the City of Delano (the City) alleging that Delano City Code § 603.02 (the Ordinance) violates the Fourth and Fourteenth Amendments of the U.S. Constitution and Article 1, §§ 7 and 10 of the Minnesota Constitution.[1] The case is be-

---

1. Yanke initially also brought his claims against Jon Steinmetz, Mary Emery, Holly Schrupp, Tom Emmer, and Joseph Mc-

fore the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, the Court grants the City's motion and denies Yanke's motion.

## I. BACKGROUND

After serious flooding in the City, the City commissioned its engineers and a citizen task force to make recommendations about how to solve the flooding problem. Based on the findings of the engineers and task force, the City concluded that illegal connection of sump pumps to the City's sanitary sewer system was likely a contributing factor. The City therefore enacted the disputed Ordinance. The Ordinance provides in relevant part:

**Subd. 4. Inspection.**

No later than July 1, 2003 every person owning improved real estate that discharges into the City's sanitary sewer system shall obtain an inspection of each building located on such property by an inspector designated by the City. The purpose of this inspection shall be to confirm that there is no sump pump or other prohibited discharge into the sanitary sewer system. In lieu of having the City inspect such property, the owner may, no later than July 1, 2003, furnish a certificate from a licensed plumber, in a form acceptable to the City, certifying that the property is in compliance with this Section 603.02.

.  .  .  .  .

**Subd. 8. Surcharge and Penalties.**

A surcharge of One Hundred Dollars ($100.00) per month is added to every sewer bill mailed after July 1, 2003, to property owners who have not obtained a property inspection by that date, and August 22, 2003 to property owners who are not in compliance with this Section 603.02 as of that date. The surcharge shall be added every month to be included in monthly bills for properties not complying with this Section 603.02.  .  .  . In addition to the $100.00 per month charge, a property owner or other person who is not in compliance [with] this Section 603.02 may be mailed, by regular mail, with a notice that such violation shall cease and desist within a time limit provided by the City Council. If such violation does not cease and desist by the established time limit, the owner of the property or other person violating Section 603.02 shall be guilty of a misdemeanor.

Yanke, a citizen of and property owner in the City, refused to allow the City to inspect his property pursuant to the Ordinance and declined to furnish a certificate from a licensed plumber by July 1, 2003. As a result, the City has been assessing him the surcharge prescribed by the Ordinance since July 2003. Yanke applied for a waiver, but that application was denied. The City has resolved not to pursue criminal charges against Yanke, but has sent him two notices that his utility services may be shut off if he does not pay his utilities bill, including the surcharge assessment, in full.

## II. DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material

Donald, individually and in their official capacities as members of the City Council. The

Court dismissed these individuals with prejudice at oral argument.

fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the opposing party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## A. Section 1983 Claims

■ Yanke brings his federal constitutional claims under 42 U.S.C. § 1983 (2000). A plaintiff asserting claims under § 1983 must identify a specific constitutional right of which he or she has been deprived under color of state law. *DuBose v. Kelly*, 187 F.3d 999, 1004 (8th Cir.1999). Here, Yanke asserts that the City deprived him of his Fourth and Fourteenth Amendment rights.

### 1. Fourth Amendment

In Count One of his Complaint, Yanke alleges that the Ordinance authorizes warrantless searches in violation of the Fourth Amendment. The City argues that it is entitled to summary judgment because Yanke lacks standing to assert a Fourth Amendment violation and because Yanke's Fourth Amendment claim fails on its merits.

■ First, with respect to standing, the City argues Yanke has not suffered an injury in fact because Yanke's property has not been searched and there is no threat of such a search. In addition, the City claims that Yanke has not shown a realistic threat that the City will prosecute him for noncompliance with the Ordinance.

■ A party seeking to invoke the jurisdiction of the federal courts must demonstrate that there is an actual case or controversy for the court to resolve. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). To satisfy this requirement, the party must show, among other things, that he "has sustained or is immediately in danger of sustaining some direct injury" and that "the injury or threat of injury [is] both real and immediate, not conjectural or hypothetical." *Id.* at 101–02, 103 S.Ct. 1660 (quotations omitted). Here, although Yanke's home has not yet been searched, he has been assessed a surcharge of $100 per month since July 2003 because he has failed to comply with the Ordinance's inspection requirement. The Court finds, therefore, that Yanke's injury is concrete and immediate. Accordingly, Yanke has standing to bring a claim under the Fourth Amendment. *Cf. Columbia Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 797 (9th Cir.2001) (holding that tenants had standing to bring Fourth Amendment claim where tenants were threatened with eviction unless they consented to allegedly unreasonable warrantless searches).

The Court now turns to the City's argument that Yanke's Fourth Amendment claim lacks merit. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause." U.S. Const. amend. IV. In *Camara v. Municipal Court of the City and County of San Francisco*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), the Supreme Court held that, in the absence of consent by the homeowner, this Amendment requires municipal health and

safety inspectors to obtain administrative search warrants before conducting home inspections. *See generally id.*

■ The City acknowledges that, in light of *Camara,* it cannot send its inspectors into Yanke's home without Yanke's consent or an administrative search warrant. The City claims, however, that the Ordinance's option of obtaining a private plumber certificate in lieu of an inspection performed by the City obviates any Fourth Amendment issue. According to the City, it may lawfully impose a surcharge upon Yanke because Yanke has failed to obtain this certificate or consent to a search performed by the City. In response, Yanke argues that the private plumbers contemplated by the Ordinance are not truly private actors, but are instead government agents. Therefore, he asserts that he has a constitutional right to insist upon an administrative search warrant.

■■ Thus, the issue before the Court is whether the plumbers' inspections are attributable to the Government or its agents. "A search by a private citizen is not subject to the strictures of the Fourth Amendment unless that private citizen is acting as a government agent." *United States v. Smith,* 383 F.3d 700, 705 (8th Cir.2004). "Whether a private party should be deemed an agent or instrument of the Government for Fourth Amendment purposes necessarily turns on the degree of the Government's participation in the private party's activities, a question that can only be resolved in light of all the circumstances." *Skinner v. Railway Labor Executives' Assoc.,* 489 U.S. 602, 614–15, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) (internal citations and quotations omitted).

In support of his argument that the private plumbers contemplated by the Ordinance are not truly private actors, Yanke relies on *State v. Buswell,* 460 N.W.2d 614 (Minn.1990). In *Buswell,* the Minnesota Supreme Court held that there are two "critical factors" that must be considered when determining whether government action is attributable to the government: (1) whether the government knew of and acquiesced in the search, and (2) whether the search was conducted to assist law enforcement efforts or to further the private party's own ends. 460 N.W.2d at 618. Yanke asserts that because the Ordinance requires the City's property owners to either consent to a search or seek a private plumber's certificate, the City *ipso facto* has knowledge of and acquiesces in the plumbers' searches. He further argues that because the private plumbers have no independent reason to inspect the property owners' sump pump/sanitary sewer connections, the search is conducted solely to assist the City's enforcement of the Ordinance.

The Court is not persuaded by Yanke's arguments. Initially, the Court notes that *Buswell* is not controlling authority in this case. Moreover, as the Minnesota Supreme Court itself acknowledged in *Buswell,* the Eighth Circuit has held that before a private citizen's conduct can be attributed to the government, some degree of government instigation of the illegal entry must be shown. *See Buswell,* 460 N.W.2d at 618 n. 4 (citing *United States v. Luciow,* 518 F.2d 298, 300 (8th Cir.1975)). Thus, under Eighth Circuit precedent, the plumbers do not become government actors simply because the City knows of and acquiesces in the plumbers' searches and/or the plumbers are motivated in part to assist the government. *See Luciow,* 518 F.2d at 300; *cf. Smith,* 383 F.3d at 705–06.

In this case, the property owners initiate the relationship with the private plumbers, determine who conducts the inspections and when they are conducted, and are the plumbers' clients. Yanke has not offered any authority, and the Court has found

none, deeming a private citizen's conduct government action under similar circumstances. Therefore, the Court is unwilling to declare the licensed plumbers "government actors" for purposes of the Fourth Amendment.

Because the plumbers are not government actors within the meaning of the Fourth Amendment and the City's inspectors have not inspected Yanke's home without his consent, Yanke's Fourth Amendment rights have not been violated. The Court concludes that the Fourth Amendment does not prohibit the City from assessing a surcharge against Yanke for his failure to abide by the inspection requirements of the Ordinance. Accordingly, the City is entitled to summary judgment on Count One of Yanke's Complaint insofar as it alleges violation of Yanke's Fourth Amendment rights under the U.S. Constitution.

### 2. Fourteenth Amendment

In Counts Two and Three of his Complaint, Yanke alleges that the City has violated his federal due process rights. Noting that it is unclear whether Yanke is alleging violations of his substantive due process rights or his procedural due process rights or both, the City moves for summary judgment on both theories. Yanke does not respond to any of these arguments. Yanke's memoranda in support of his motion for summary judgment and in opposition to the City's motion for summary judgment reveal that the gravamen of his Complaint is that the Ordinance violates his Fourth Amendment rights. Counts Two and Three appear to be alternative approaches to pleading that Fourth Amendment claim. The Court, however, has already determined that Yanke's Fourth Amendment rights were not violated. Accordingly, for the reasons discussed above, the Court concludes that the City is entitled to summary judgment on Counts Two and Three of Yanke's Complaint inso-

far as they allege violations of the U.S. Constitution.

In sum, Yanke has not identified a constitutional right of which he has been deprived and the Court therefore concludes that his § 1983 claims must be dismissed.

### B. Violations of the Minnesota Constitution

In Count One of his Complaint, Yanke alleges that enforcement of the Ordinance violates his right to be free from unreasonable searches under Article 1, § 10 of the Minnesota Constitution. The language of Article 1, § 10 parallels the language of the Fourth Amendment. See Minn. Const. art. 1, § 10. Here, Yanke has not offered any authority that would cause the Court to conclude that private conduct is more readily deemed government action under Article 1, § 10 of the Minnesota Constitution. Accordingly, the Court concludes that, in this case, the protection offered by Article 1, § 10 of the Minnesota Constitution is the same as the protection offered by the Fourth Amendment of the U.S. Constitution. Because the Court has already determined that Yanke's Fourth Amendment rights have not been violated, the Court similarly holds that his Article 1, § 10 rights have not been violated.

In Counts Two and Three of his Complaint, Yanke also alleges that the City has violated his rights under the due process clause of Article 1, § 7 of the Minnesota Constitution. The due process protection provided under the Minnesota Constitution is identical to the due process guaranteed under the U.S. Constitution. *Sartori v. Harnischfeger Corp.*, 432 N.W.2d 448, 453 (Minn.1988). Because Yanke does not address his state due process claims in his memorandum in support of his motion for summary judgment or in his memorandum in opposition to the City's motion for summary judgment and

the Court has already determined that his federal due process claims should be dismissed, the Court similarly holds that the City is entitled to summary judgment on Yanke's Article 1, § 7 claims.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The City's motion for summary judgment [Docket No. 18] is GRANTED.

2. Yanke's motion for summary judgment [Docket No. 24] is DENIED.

3. Yanke's Complaint [Docket No. 1] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.